UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBRA MILLER BODDEN,

    Plaintiff,

v.                                                                          CASE NO. 8:24-cv-2978-SJH

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## **MEMORANDUM ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application under the Social Security Act ("Act") for Disability Insurance Benefits ("DIB"). In a decision dated May 22, 2024, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability from April 30, 2021, the alleged disability onset date, through the date of decision. Tr. at 27-38. For the reasons herein, the Commissioner's decision is due to be **affirmed**.

    **I.**    **Issue on Appeal**

Plaintiff argues a single issues on appeal, contending that

> [t]he ALJ erred by failing to account for the "total limiting effects" of her mental health impairment of major depressive disorder in finding that Plaintiff can perform her past highly skilled jobs.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.

Doc. 13 at 1 (emphasis removed). I find that the argument lacks merit.

## II.    Standard of Review

Plaintiff appeals the denial of her applications for DIB under Title II of the Act, 42 U.S.C. § 401 *et seq.*[2] Under 42 U.S.C. § 405(g), judicial review "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Ohneck v. Comm'r, Soc. Sec. Admin.*, No. 22-13984, 2023 WL 8946613, at *2 (11th Cir. Dec. 28, 2023).[3]

The agency's factual findings are "conclusive" if "substantial evidence" supports them. *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (citation omitted). Though requiring "'more than a mere scintilla'" of evidence, the threshold for this standard "is not high[,]" *id.*, and does not require a preponderance of the evidence, *Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1309 (11th Cir. 2024); *see also Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015). So long as "the ALJ's decision clears the low evidentiary bar[,]" a reviewing court must affirm even if it "would have reached a different result and even if a preponderance of the evidence

---

[2] The regulations under Title II are located at 20 CFR pt. 404.

[3] Unpublished opinions are not binding precedent; however, they may be cited when persuasive on a particular point. *See United States v. Futrell*, 209 F.3d 1286, 1289-90 (11th Cir. 2000); 11th Cir. R. 36-2.

weighs against the Commissioner's decision[.]" *Flowers*, 97 F.4th at 1309. Nor may a reviewing court "decide the facts anew, make credibility determinations, or re-weigh evidence." *Id.* at 1306 (quotation omitted); *see also Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1315 (11th Cir. 2024); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The same deference does not attach to conclusions of law. *See Flowers*, 97 F.4th at 1304, 1306; *Martin*, 894 F.2d at 1529. A "failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529; *see also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

### III. The ALJ's Decision

Under the Act's general statutory definition, a person is considered disabled if unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A).[4] In making a disability determination, the Social Security Administration generally uses a five-step sequential process. 20 C.F.R. § 404.1520(a)(4).[5]

---

[4] Because the definitions of disability under Title II and Title XVI of the Act are the same, cases under one statute are generally persuasive as to the other. *See Jones v. Astrue*, No. 3:10-cv-914-J-JBT, 2011 WL 13173806, at *2 n.2 (M.D. Fla. Oct. 17, 2011).

[5] At step one, the person must show the person is not engaged in substantial gainful activity. At step two, the person must show the person has a severe impairment or combination of impairments. At step three, the person may show the impairment or

3

The ALJ applied this five-step sequential process. Tr. at 28-38.[6] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2021, the alleged disability onset date. *Id.* at 29. The ALJ found at step two that Plaintiff had the following severe impairments: "cardiomyopathy, obesity, sleep apnea, hypertension, and diverticulitis (20 CFR 404.1520(c))." *Id.* (emphasis removed). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id.* at 31. The ALJ found that Plaintiff had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except only lifting 20lbs occasionally and 10lbs frequently; carrying 20lbs occasionally and 10lbs frequently; sitting for 6hrs, standing for 4hrs, walking for 4hrs; push/pull as much as can lift/carry. The claimant can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop frequently, kneel frequently, crouch frequently, crawl frequently. The claimant can work at unprotected heights frequently, moving mechanical parts frequently, in extreme cold frequently, in extreme heat occasionally, in vibration frequently.

---

combination of impairments meets or equals the severity of one of the listings in the appendix of the applicable regulations. Absent such a showing, at step four, the person must show the person cannot perform the person's past relevant work given the person's residual functional capacity ("RFC"). Step five, at which the burden temporarily shifts to the Commissioner, asks whether there are a significant number of jobs in the national economy the person can perform given the person's RFC, age, education, and work experience. If it is determined at any step the person is or is not disabled, the analysis ends without proceeding further. *See* 20 C.F.R. § 404.1520(a)(4); *Flowers*, 97 F.4th at 1308; *Jacob v. Comm'r of Soc. Sec.*, No. 8:22-cv-2435-CEH-TGW, 2024 WL 3548902, at *3-4 (M.D. Fla. July 26, 2024).

[6] Title II of the Act "provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need." *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (quotation omitted). The ALJ found Plaintiff met the insured status requirements through June 30, 2027. Tr. at 29.

*Id.* at 33 (emphasis removed). The ALJ found at step four that Plaintiff can perform past relevant work; alternatively, for step five, the ALJ found that even if not able to perform past relevant work, jobs exist in significant numbers in the national economy that she can perform. *Id.* at 36-37. As such, the ALJ found that Plaintiff has not been under a disability from the alleged date of onset though the date of decision. *Id.* at 36-38.

### IV. Analysis

Plaintiff argues on appeal that

> [t]he ALJ erred by failing to account for the "total limiting effects" of her mental health impairment of major depressive disorder in finding that Plaintiff can perform her past highly skilled jobs.

Doc. 13 at 1 (emphasis removed). More specifically, Plaintiff argues (i) "[t]he ALJ found that Plaintiff had mild mental impairments, not none"; and (ii) courts agree "that an ALJ errs when she generally finds that the claimant has mild mental impairment and does not include corresponding limitations in the RFC, or explain why they were excluded." *Id.* at 4. I am unpersuaded. As explained below, the ALJ here *did* adequately explain the decision not to include limitations in the RFC corresponding to Plaintiff's mild mental impairment.

Preliminarily, substantial evidence supports—and Plaintiff does *not* challenge—the ALJ's evaluation of Plaintiff's depression being a non-severe impairment causing only mild limitations. *See* Doc. 16 at 2. At step two, the ALJ stated in pertinent part:

5

The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

The claimant's medically determinable mental impairment of major depressive [disorder] does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.

In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. The claimant testified that she has brain fog. Her memory has declined. She forgets her grandchildren's names and has trouble retaining information. When following instructions, she has to refer back to them continuously. Her husband handles the finances. She can drive but gets tired. The claimant is receiving treatment for depression and anxiety and takes medications, which are helpful. She still has crying spells. The claimant has reported symptoms of depressed mood, irritability, anergia, crying spells, negative self-perception, insomnia, difficulty concentrating, and anxiety. 13F/7. Her mental status examination are often normal. 2F/51; 11F/3; 16F/6; 21F/33. When she has an abnormal examination, it is due to anxious or depressed mood with restricted affect, but her no other deficiencies. 13f/7, 10, 12, 15. She had one instance of psychomotor retardation. 13F/18. She is taking medications for her mental condition. 13F/8; 21F/25.

The next functional area is interacting with others. In this area, the claimant has mild limitation. The claimant testified that she gets along with others and can take criticism, but it would cause internal stress. Stress increased her palpitations and chest pains. She likes being around people but does not have the energy to do so. She does socialize, especially with family, but also sees friends. The claimant is receiving treatment for depression and anxiety and takes medications, which are helpful. She still has crying spells. The claimant has reported symptoms of depressed mood, irritability, anergia, crying spells, negative self-perception, insomnia, difficulty concentrating, and anxiety. 13F/7. Her

mental status examination are often normal. 2F/51; 11F/3; 16F/6; 21F/33. When she has an abnormal examination, it is due to anxious or depressed mood with restricted affect, but her no other deficiencies. 13F/7, 10, 12, 15. She is taking medications for her mental condition. 13F/8; 21F/25.

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The claimant testified that some days, she is so fatigued that she cannot get out of bed. She has one to two bad days per week. She naps daily. She can cook and do some chores and enjoys baking. The claimant has reported symptoms of depressed mood, irritability, anergia, crying spells, negative self-perception, insomnia, difficulty concentrating, and anxiety. 13F/7. Her mental status examination are often normal. 2F/51; 11F/3; 16F/6; 21F/33. When she has an abnormal examination, it is due to anxious or depressed mood with restricted affect, but not decreased concentration. 13f/7, 10, 12, 15. She had one instance of psychomotor retardation. 13F/18. She is taking medications for her mental condition. 13F/8; 21F/25.

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant testified that some days, she is so fatigued that she cannot get out of bed. She has one to two bad days per week. She has trouble doing laundry and changing her sheets. She enjoys baking. Her husband handles the finances. She can drive but gets tired. She naps daily. She uses a shower chair. She can dress herself but may need help with clasps. She can cook and do some chores. The claimant is receiving treatment for depression and anxiety and takes medications, which are helpful. She still has crying spells. The claimant has reported symptoms of depressed mood, irritability, anergia, crying spells, negative self-perception, insomnia, difficulty concentrating, and anxiety. 13F/7. Her mental status examination are often normal. 2F/51; 11F/3; 16F/6; 21F/33. When she has an abnormal examination, it is due to anxious or depressed mood with restricted affect, but her no other deficiencies. 13F/7, 10, 12, 15. She had one instance of psychomotor retardation. 13F/18. She is taking medications for her mental condition. 13F/8; 21F/25. Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 404.1520a(d)(1)).

Tr. at 30-31. The ALJ then acknowledged that "[t]he limitations identified in the 'paragraph B' criteria are not" an RFC assessment and explained that "[t]he following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." *Id.* at 31.

Following that discussion, at step four, in evaluating the RFC, the ALJ later stated in pertinent part:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.
>
> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)-- i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do workrelated activities.
>
> The claimant testified that … [s]he has brain fog. Her memory has declined. She forgets her grandchildren's names and has trouble retaining information. When following instructions, she has to refer back to them continuously. She gets along with others and can take criticism, but it

> would cause internal stress. Stress increased her palpitations and chest pains. She likes being around people but does not have the energy to do so. Her husband handles the finances. She can drive but gets tired. She naps daily. She uses a C-PAP for her sleep apnea. She uses a shower chair. She can dress herself but may need help with clasps. She can cook and do some chores. She does socialize, especially with family, but also sees friends. She is a recovering alcoholic. She has been sober for twenty-seven years. She walks daily and on good days can make it two blocks. The claimant is receiving treatment for depression and anxiety and takes medications, which are helpful. She still has crying spells.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.* at 34-35. Continuing with the RFC discussion, the ALJ explained that:

> At the initial determination level, the state agency examiners found the claimant's [depression] non-severe. 2A/3. Dr. Jorge Pena found no more than mild mental limitations. 2A/4-5. ….
>
> At the reconsideration level, the state agency examiners found the claimant's [depression] non-severe. 4A/7. Dr. Eric Wiener also found no more than mild mental limitations. 4A/7-8.

*Id.* at 35-36. The ALJ found these opinions "somewhat persuasive" insofar as the prior administrative findings concerning Plaintiff's functional abilities and limitations were generally well supported and consistent with the evidence reviewed at the time (but not, as to other impairments, with the full record and other evidence). *Id.* at 36.

Plaintiff does not generally mention, much less contest, the foregoing. Plaintiff instead incorrectly claims that "there is no discussion about her non-severe mental health impairment of major depressive disorder when crafting the RFC." Doc. 13 at

9

7. The record reflects otherwise, Tr. at 33-36, and Plaintiff's corresponding argument is unavailing.

Here, the ALJ expressly considered the entire record and all symptoms and specifically stated that she considered all medically determinable impairments, including those that were not severe, when assessing the RFC. Tr. at 28, 30, 33; *see also Nichols v. Comm'r, Soc. Sec. Admin.*, 679 F. App'x 792, 797 (11th Cir. 2017). In addition to the analysis at step two, the ALJ specifically and properly discussed Plaintiff's mental impairment and symptoms when evaluating the RFC, including *inter alia* (i) Plaintiff's reported symptoms, including for example, brain fog, declined memory, forgetfulness, difficulty following instructions, and stress induced by criticism; (ii) Plaintiff's activities of daily living notwithstanding her symptoms, including for example, that she gets along with others, can drive, can cook and do some chores, socializes with friends and family, and walks daily; (iii) the treatment and medications Plaintiff received for her depression and anxiety, "which are helpful"; and (iv) evaluations by two state-agency psychological consultants, each opining that Plaintiff's medically determinable mental impairment was non-severe and assessing no more than mild limitations. *Id.* at 34-36.

Plaintiff's assignment of error fails. *See Blackmon v. Comm'r of Soc. Sec.*, No. 23-12894, 2024 WL 3495022, at *8 (11th Cir. July 22, 2024) ("Here, the ALJ did not err in failing to include any mental limitations in Blackmon's RFC because it appropriately considered the record evidence regarding her non-severe mental

10

impairments at step four of the sequential evaluation, and its decision is supported by substantial evidence. … [A]t step four in relation to the RFC, the ALJ again reviewed Blackmon's activities related to adapting or managing herself and the persuasiveness of the psychological examiners. …Thus, the ALJ here considered whether Blackmon's mental limitations affected her RFC and concluded that they did not."); *Garcia v. Comm'r, Soc. Sec. Admin.*, No. 23-11184, 2023 WL 7404856, at *5 (11th Cir. Nov. 9, 2023) ("Contrary to Garcia's argument, the ALJ was not required to incorporate Garcia's mental impairments that he determined at step two in the rest of his RFC assessment because he found any impairments to be only mild, not moderate. … In formulating the RFC, the ALJ again detailed Garcia's mental impairments. … In doing such, the ALJ demonstrated that he considered all evidence of record regarding Garcia's impairments, including those which he ultimately found nonsevere."); *Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022) ("Notably, an ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations …. Here, the ALJ addressed Plaintiff's mild mental limitations … by referencing Plaintiff's limitation in social interactions when making the RFC assessment. … Moreover, in explaining how he determined Plaintiff's RFC, the ALJ noted that he considered the findings of several state agency consulting physicians regarding Plaintiff's mental health."); *see also Watson v. Comm'r of Soc. Sec.*, No. 24-10668, 2025 WL 274903, at *3 (11th Cir. Jan. 23, 2025); *Lawton v. Dudek*, No. 8:24-cv-00194-AEP, 2025 WL 782129,

11

at *6-7 (M.D. Fla. Mar. 12, 2025).[7] This independently sufficient analysis at step four is even further reinforced by the analysis, discussed above, at step two, wherein the ALJ cited Plaintiff's activities of daily living, often normal mental status examinations (and limited deficiencies at abnormal examinations), interactions with others, and use of medication. Tr. at 30-31; *see also Prude v. Comm'r, Soc. Sec. Admin.*, No. 23-14198, 2024 WL 5103664, at *4 (11th Cir. Dec. 13, 2024).

### V. Conclusion

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **affirmed**.

2. The Clerk of Court is **directed** to enter judgment accordingly, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on September 24, 2025.

Samuel J. Horovitz
United States Magistrate Judge

Copies to:
Counsel of Record

---

[7] The authority cited by Plaintiff, *see* Doc. 13 at 9, such as *Green v. Comm'r of Soc. Sec.*, No. 8:24-cv-1424-JSM-SJH, 2025 WL 688972 (M.D. Fla. Feb. 14, 2025), *report and recommendation adopted*, 2025 WL 676231 (M.D. Fla. Mar. 3, 2025), is thus distinguishable. In those cases, unlike here, the ALJ failed to meaningfully discuss the non-severe mental impairments in the RFC analysis. For example, in *Green* the ALJ's "RFC determination failed to mention or acknowledge, much less consider, any mental impairments" and "[t]o the contrary, the RFC discussion mentioned only physical symptoms." *See id.* at *3.